IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN HUNTER PARKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 2:20-CV-315-KFP |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff seeks judicial review of the denial of his claim for social security disability benefits and supplement security income benefits. Doc. 18 at 1. Upon review of the parties' briefs, the transcript of administrative proceedings, and applicable case law, this matter is REVERSED and REMANDED to the Commissioner for further consideration.

**I.   STANDARD OF REVIEW**

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v.*

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the reviewing court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II.   DISCUSSION

Plaintiff raises three issues in his brief: (1) the ALJ erred by finding that his conditions do not meet or medically equal the requirements of Medical Listing 12.05C; (2) the ALJ failed to properly determine his mental RFC based on opinion evidence; and (3) the ALJ failed to properly evaluate Plaintiff's subjective complaints.

### A.   Medical Listing 12.05C

The Commissioner of Social Security uses a five-step, sequential evaluation process to determine if a claimant is entitled to benefits. At Step 3, an ALJ must determine whether the person's impairments meet or equal an impairment in the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925; 20 C.F.R. pt. 404, subpt. P., app. 1. The claimant bears the burden of establishing that his impairment meets a Listing. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). The impairment "must meet *all* of the specified medical criteria," and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). An impairment medically equals a Listing if it is at least equal in severity and duration to the criteria of a Listing. *See* 20 C.F.R. §§ 404.1526(a), 416.926(a).

2

Plaintiff argues that his mental impairment meets or equals Medical Listing 12.05C, which has three threshold requirements: (1) significantly subaverage general intellectual functioning and (2) deficits in adaptive functioning that (3) initially manifested during the developmental period (before age 22).[2] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. An intellectual disability satisfies the severity requirement in paragraph C of Listing 12.05 when the claimant has a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. In this case, the ALJ determined that Plaintiff met the three threshold requirements of Listing 12.05 (R. 629), and the only point of contention on this issue is whether the ALJ properly considered Plaintiff's IQ score under paragraph C.[3]

A qualifying IQ score alone is insufficient to establish intellectual disability. *Harris v. Comm'r of Soc. Sec.*, 505 F. App'x 874, 876 (11th Cir. 2013) (recognizing that a valid IQ score need not be conclusive of intellectual disability when the score is inconsistent with evidence of claimant's daily activities and behavior). There is a rebuttable presumption that a claimant manifested deficits in adaptive functioning before the age of 22 if the claimant establishes a valid IQ score between 60–70. *Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268–69 (11th Cir. 2001). However, the Commissioner may rebut this *Hodges* presumption with evidence of the claimant's daily living supporting a contrary

---

[2] As both parties agree, the claims in this case must be considered under the criteria in Medical Listing 12.05C as it existed on August 18, 2016, and the revisions that became effective on January 17, 2017, do not apply.

[3] Mr. Parker has a verbal IQ score of 65, a performance IQ score of 72, and a full-scale IQ score of 65. R. 630.

3

finding, and an ALJ may reject an IQ score if he finds it inconsistent with other evidence concerning a claimant's daily activities and behavior. *Williams v. Comm'r of Soc. Sec.*, No. 8:14-CV-680-T-PDB, 2015 WL 12862923, at *4 (M.D. Fla. Sept. 23, 2015) (citing *Hodges*, 276 F.3d at 1269 and *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)). In the seminal case on this issue, *Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir. 1986), the Eleventh Circuit rejected a 12.05C claim where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs, such as an administrative clerk, statistical clerk, and algebra teacher. The court held the ALJ was not required to find the claimant had an intellectual disability based on the IQ test but was "required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior." *Id*. at 1500.

 Accordingly, an ALJ must first determine whether an IQ test is valid; if so, the ALJ must then find the claimant presumptively disabled and next determine whether the Commissioner has met its burden of rebutting the presumption. *See Hogue v. Colvin*, No. 2:13-CV-00375-N, 2014 WL 1744759, at *4–5 (S.D. Ala. Apr. 30, 2014) (noting that plaintiff had carried his burden of demonstrating that he met Listing 12.05C and that he was entitled to the rebuttable presumption of disability (citing *Frank v. Astrue,* No. 2:11–CV-00215-C, 2011 WL 6111692, at *4 (S.D. Ala. Dec. 8, 2011) (stating that "[u]nder the correct framework—which the ALJ should apply on remand—the plaintiff is entitled to this presumption and the burden falls on the Commissioner to rebut it")).

4

This is Plaintiff's second appeal from the ALJ's decision denying his application for disability benefits.[4] In the first appeal, this Court remanded the case, noting that the ALJ appeared to accept that Plaintiff's IQ scores were sufficient to meet Listing 12.05C and instructing the ALJ to consider Listing 12.05C under the appropriate standard and clarify the reasons for finding that the evidence rebuts the presumption of deficits in adaptive function to which Plaintiff is entitled based on his IQ scores. R. 726, 741–42. In her second decision following remand, the ALJ acknowledged these instructions, but, after concluding in Step 3 that the Plaintiff met the three threshold requirements of Listing 12.05, stated there were "several reasons to question the *validity* of the [IQ] scores." R. 630 (emphasis added). The ALJ based her validity questions on the 5-point measurement of error in assessing IQs; Plaintiff's mental disorders (ADHD and schizoaffective disorder), which she said could have affected the scores; a possible conduct disorder during adolescence that could have affected the score; Plaintiff's post-high school education transcript that conflicts with the IQ score; and Plaintiff's diagnosis of borderline intellectual functioning (as opposed to mild mental retardation or mild intellectual disability). R. 630–32.

An IQ score is valid if the IQ test measures what it is supposed to measure. *Monroe v. Astrue*, No. CV 211-102, 2013 WL 12098258, at *2 (S.D. Ga. June 11, 2013), *aff'd sub nom. Monroe v. Comm'r of Soc. Sec. Admin.*, 569 F. App'x 833 (11th Cir. 2014) (citing 20

---

[4] Plaintiff filed his application for disability benefits on October 17, 2014, alleging disability beginning April 7, 2013. R. 17. An administrative hearing was held on April 14, 2016, after which the ALJ issued an unfavorable decision on August 23, 2016. R. 17–31. Plaintiff appealed that decision, and this Court remanded the case on October 30, 2018. The ALJ held a second administrative hearing on December 4, 2019, and issued a second unfavorable decision on March 2, 2020. R. 653, 661–87.

5

C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.00(D)(5)(c)). The "narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Hurskin v. Comm'r of Soc. Sec.*, No. 8:15-CV-253-T-JSS, 2016 WL 825538, at *4 (M.D. Fla. Mar. 3, 2016) (citing 20 C.F.R. § 12.00(D)(6)(a) and *Popp*, 779 F.2d at 1499 (noting the importance of the narrative report that accompanies a claimant's IQ score in considering whether the IQ score is valid)).

Here, the school psychologist who administered Plaintiff's IQ test included a statement in the narrative report that the scores were valid. R. 411. Thus, Plaintiff argues that the ALJ made an improper lay conclusion that the scores are invalid. Conversely, the Commissioner argues that the ALJ accepted the validity of the IQ scores and that her decision "satisfies the Court's directives by providing a thorough discussion of the substantial evidence that supports a finding that Plaintiff's impairments did not meet Listing 12.05C, because the presumption created by the IQ score was rebutted by other evidence of record." Doc. 21 at 5.

The Court cannot agree with the Commissioner's characterization of the ALJ's decision. The ALJ was careful to emphasize that Listing 12.05C requires a *valid* IQ test, expressly stated that there were reasons to question the validity, and never stated that Plaintiff was entitled to the rebuttable presumption of disability. R. 630–32. There is a difference between finding that a test is invalid and finding a test valid but that the presumption of disability is rebutted. *See Loveday v. Astrue*, No. 1:10CV14-MP/WCS, 2010 WL 4942740, at *10–11 (N.D. Fla. Oct. 22, 2010), *report and recommendation*

6

*adopted,* No. 1:10-CV-00014-MP-WCS, 2010 WL 4942733 (N.D. Fla. Nov. 23, 2010) (when ALJ questioned the validity of the scores but assigned them little weight, the court said this reasoning "side-stepped" the question of validity, making it unclear whether the ALJ found the scores to be invalid or not worthy of evidentiary weight). The *Hodges* presumption does not apply if the ALJ determines that the IQ scores are invalid; however, if an ALJ does not apply it, he must explain the basis for not applying it and point to evidence supporting the existence of that basis. *Rudolph v. Comm'r, Soc. Sec. Admin.*, 709 F. App'x 930, 933 n.2 (11th Cir. 2017).

In this case, the ALJ expressly acknowledged the Court's remand instructions to clarify how the evidence rebutted the presumption of disability based on Plaintiff's apparently valid IQ scores. However, the ALJ's decision questions the validity of the scores and fails to mention the *Hodges* presumption or the Commissioner's burden to rebut it. An ALJ's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citation omitted). The ALJ's express acknowledgement of the remand instructions, followed by questions concerning the validity of Plaintiff's IQ scores and a failure to apply the *Hodges* presumption, prevent the Court from determining whether the proper legal analysis was conducted.

Based on the Court's review of the record, it appears there may be sufficient evidence for the Commissioner to carry its burden when rebutting the presumption of disability to which Plaintiff would be entitled with a valid IQ score. This evidence includes

Plaintiff's daily activities of feeding and watering horses for his family's horse business, preparing simple meals, cleaning, mowing grass, handling personal care, shopping, hunting, fishing, swimming, and spending time with his family playing games (R. 633); his ability to obtain a driver's license (R. 667); his ability to drive bulldozers and big trucks in high school (R. 389); his self-reported employment as a mechanic for a period of over two years, where he indicated that his job duties were to "mechanic on vehicles" and use machines, tools, equipment, and technical knowledge and skills (R. 266–69); and, most important, his transcript from Trenholm Technical College, where, despite his claim that he cannot read and write (R. 671), Plaintiff received a certificate in diesel mechanics, earning Bs and Cs in a year-long program of courses like Advanced Engine Analysis, Electrical/Electronic Fundamentals, Electrical Schematics and Symbols, Fuel and Ignition Systems, Heavy Vehicle Brakes, Pneumatics and Hydraulics, and Heavy Vehicle Drive Train (R. 1035).[5] However, the Court cannot speculate as to whether the ALJ found Plaintiff's IQ scores valid or invalid; speculate what the ALJ might have found if the *Hodges* presumption was afforded or if burdens were shifted; rewrite the ALJ's decision; or make a legal finding crucial to her decision. *See*, *e.g., Rudolph v. Comm'r, Soc. Sec. Admin.*, 709 F. App'x 930, 933 (11th Cir. 2017) (stating ALJ's decision was legally flawed because ALJ did not apply *Hodges* presumption and that failure to apply correct law or provide reviewing court with sufficient reasoning for determining whether proper legal

---

[5] As the ALJ remarked, "It is virtually inconceivable that someone who could not read at all could have made Bs and Cs in such a highly technical program." R. at 631. Additionally, on Plaintiff's Function Report and Work History Report, Plaintiff indicated that he was the person completing the forms. R. 258–65, 266–73.

analysis had been applied required reversal (citing *Ingram*, 496 F.3d at 1260)); *Grubbs v. Colvin*, No. CV 115-055, 2016 WL 4523168, at *4 (S.D. Ga. Aug. 8, 2016), *report and recommendation adopted,* No. CV 115-055, 2016 WL 4523159 (S.D. Ga. Aug. 29, 2016) (remanding case where ALJ applied wrong legal standard, there was no mention of the *Hodges* presumption in opinion, and court would not speculate as to what the ALJ might have found); *Yates v. Astrue*, No. CIV.A. 09-00212-CGN, 2009 WL 5207483, at *7 (S.D. Ala. Dec. 30, 2009) (remanding when there was "simply no indication that the ALJ employed the *Hodges* presumption"). Accordingly, remand is required for the ALJ to clarify whether she finds Plaintiff's IQ score to be valid or invalid. If valid, the ALJ must afford Plaintiff the benefit of the *Hodges* presumption and determine whether the Commissioner has carried its burden to rebut the presumption. If the ALJ finds that Plaintiff's IQ score is invalid and that the *Hodges* presumption does not apply, she must explain the basis for the finding and point to evidence supporting that finding.[6]

### B.   Plaintiff's RFC

Plaintiff argues that the ALJ failed to properly determine his RFC based on the opinion evidence of Dr. Thomas LeCroy. Specifically, Plaintiff asserts the ALJ erred in (1) rejecting Dr. LeCroy's opinion that Plaintiff would miss 1–2 days of work per month due

---

[6] The ALJ's error with respect to Plaintiff's 12.05C claim is dispositive. Therefore, the Court is not required to address Plaintiff's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960 (11th Cir. 2015) (unpublished) (recognizing that there is no need to analyze other issues when case must be reversed due to other dispositive errors). However, due to the length of time this case has been pending since Plaintiff's initial application, the Court feels compelled to address the other issues raised in Plaintiff's brief for the benefit of the parties and the ALJ on remand.

to depression and (2) failing to consider Dr. LeCroy's finding that Plaintiff could not understand or remember "detailed" instructions.

The task of determining a claimant's RFC and ability to work is within the province of the ALJ, not doctors. *Driggers v. Astrue*, No. 1:12-CV-00272-LSC, 2012 WL 4478963, at *4 (N.D. Ala. Sept. 20, 2012) (citing *Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010)). An ALJ may "distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation." *Johnson v. Saul*, No. CV418-115, 2020 WL 858891, at *2 (S.D. Ga. Jan. 31, 2020), *report and recommendation adopted,* No. CV418-115, 2020 WL 865407 (S.D. Ga. Feb. 19, 2020) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record")).

The ALJ gave substantial weight to most of Dr. LeCroy's opinions. R. 632–35. However, she gave only partial weight to Dr. LeCroy's opinion that Plaintiff would miss 1–2 days of work due to depression (R. 106) because the evidence showed that Plaintiff's "condition rapidly improved" after Dr. LeCroy's evaluation "to the point that he would not be expected to miss 1–2 days of work per month" (R. 649). Plaintiff's treatment records for his physical and mental conditions, as outlined in detail in the ALJ's decision, constitute substantial evidence to support this finding.

For instance, Plaintiff alleges that he cannot work because of frequent seizures. However, as the ALJ noted, Plaintiff's medical records show that he had a seizure in March

10

2012, two seizures four years later in March 2016 (his medication level was low, but the doctor still increased the dosage), a seizure in April 2016, a seizure in June 2016 (he was noted to be non-compliant with medication even though he had no side effects), a normal EEG in August 2016, and no reported seizures after June 2016. R. 467, 483, 486, 535–36, 638–40, 1184, 1191, and 1235. Based on this evidence, the ALJ found little evidence of frequent, ongoing seizures that would comprise his ability to work. R. 640.

With respect to Plaintiff's mental conditions, the ALJ provided a thorough review of Plaintiff's medical records from Montgomery Area Mental Health Authority and Health Services from 2015 through September 2019. R. 642–48. These records show that in 2015 Plaintiff had problems such as anger issues, sleep problems, and nightmares, but they also show that he was doing a fair job managing his anger, that he would get agitated but that it was better, that he kept his mood level pretty level, that he had not experienced outbursts or seizures in a long time, that he had no problems taking medication, that he was helping with his family's horse riding business, and that he was "not having any problems right now, just waiting on disability." R. 520–32 and 643 (citing R. 522).

His 2016 mental health records are similarly unremarkable for the most part. In April 2016 he reported to be doing well other than the seizure that occurred the same month. R. 1090. In June 2016, he reported that functioning was not difficult at all, and he presented without depressed mood, diminished interest or pleasure, guilt, restlessness, or thoughts of death or suicide. R. 1184. In July 2016 he had a panic attack and went to the emergency room (R. 644), but his visits from September 2016 and January 2017 were unremarkable (R. 1087, 1193–94).

11

In February 2017, he reported depressive and manic symptoms but denied symptoms of psychosis, with a decrease in anxiety and symptoms over the past year. R. 1054. In March he reported he had been out of medication since December. R. 1085. By April, he reported that everything had improved since resuming medication, and he denied any side effects. R. 1083. In July he appeared to be stable and reported no problems; in August he reported his medication regimen was working well. R. 1071, 1082. In October, he reported depression, anxiety, and high irritability, but by February 2018 he reported that his mood was stable and denied symptoms of psychosis, mania, anxiety, or depression. R. 1245.

In March 2018, he reported that he was "doing really good" and that his medications were working. R. 1279. In April 2018, he was doing well and keeping his anger under control, with no incidents in a few years and with no depression recently. R. 1260. In June, he reported that he was still having auditory hallucinations but that overall his mood and sleep were good with no medication side effects. R. 1277. From August through December 2018, he reported dissociative-type episodes, episodes of threatening to kill, episodes of giggling and thoughts of hurting people, intrusive thoughts, and that he was doing "terrible." R. 1309–16. However, by January 9, 2019, after medication changes, he was doing well, with no recent episodes or behavioral outbursts. R. 1317. He reported that his medications were working well, he was sleeping well, and he had no medication side effects. *Id*.

By April 2019, he again reported that his medications were working well and keeping him stable, he was coping with symptoms by going outside, he was taking care of

horses and staying busy, depression did not interfere with his ability to do work at home, and everything was "going well." R. 1326. In May 2019, he reported that he was doing okay, that his medications were working, that he was "snappy" but only when he lacked sleep, that he was socializing with family and others more, and he had no current issues or problems. R. 1328. His September 2019 records show that he had some trouble sleeping and some mood swings but are otherwise unremarkable, and his October 2019 records show that he was doing well, sleeping well, and had no episodes of aggression. R. 648.

From its review of Plaintiff's records, the Court concludes that the ALJ correctly summarized Plaintiff's mental health treatment as follows:

> As described above, Claimant had a history of severe psychosis prior to the alleged onset date of disability, but has subsequently had times when he has had no symptoms. He has had symptoms at times when out of medication and they have decreased when he resumed medications. Claimant had a period of a few months in 2018 when he reported increased symptoms but with adjustment of medications, he started to show improvement in January 2019 and continued to show improvement through October 2, 2019, the date of the most recent visit of record to Montgomery Area Mental Health Authority [before his hearing on December 4, 2019].

R. 649. Based on these medical records, in crafting Plaintiff's RFC, the ALJ omitted Dr. LeCroy's opinion that Plaintiff would miss 1–2 days per work each month due to depression. Contrary to Plaintiff's assertion and the cases he cites, the ALJ did not act as physician and judge by substituting "his own hunch or intuition for the *diagnosis* of a medical professional," *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992), or contradicting a medical professional on a *medical* conclusion, such as what stage a physical or mental illness had reached years before it was first diagnosed, *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (emphasis added). Instead, the ALJ reviewed medical evidence

and medical opinions and crafted an RFC based on the evidence and the weight assigned to medical the opinions. The medical records in this case, which show that Plaintiff has infrequent seizures, with no reported seizures since 2016, and that his mental conditions have improved and are well-controlled on medication, constitute substantial evidence supporting the ALJ's determination to assign partial credit to Dr. LeCroy's opinion that the Plaintiff would miss work 1–2 days per month for any condition and to omit that opinion from Plaintiff's RFC.

Plaintiff also argues that the ALJ erred in disregarding Dr. LeCroy's opinion that Plaintiff is limited to understanding and remembering simple instructions and cannot understand or remember detailed instructions. He contends this omission is crucial because the jobs identified by the ALJ require level 2 reasoning, which entails carrying out "detailed" written and oral instructions.[7] Again, because the RFC is within the province of the ALJ and an ALJ may distill an RFC from the record as a whole without mirroring a specific medical opinion, the ALJ was not required to include this specific limitation in the RFC. If she had, however, the Eleventh Circuit has confirmed that this limitation poses no apparent conflict with the reasoning level 2 jobs assigned by the ALJ. In *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021), the ALJ found that the plaintiff could only carry out simple instructions but that she could perform level 2 jobs requiring the ability to follow "detailed but uninvolved" instructions. In analyzing the issue of whether a conflict existed between the RFC and the assigned jobs, the court stated:

---

[7] Level 2 jobs actually require "detailed *but uninvolved*" instructions. DOT, App. Appendix C - Components of the Definition Trailer, 1991 WL 688702) (emphasis added).

> We have yet to resolve in a published decision whether there is an apparent conflict between one's limitation to following simple instructions and positions that require the ability to follow "detailed but uninvolved" instructions. The question has split the district courts in this circuit. After careful review and with the benefit of oral argument, we hold that there is no apparent conflict.

*Id*. at 1320 (following the reasoning of the Eighth Circuit in *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010) and the Fourth Circuit in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019), both of which found no apparent conflict between a limitation to simple instruction and jobs with a reasoning level of two). Accordingly, the Court finds that the ALJ did not err in omitting Dr. LeCroy's limitation regarding simple instructions from the RFC and that, even if the limitation had been included, there is no apparent conflict between the limitation and the level 2 jobs assigned by the ALJ.

### C. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to properly evaluate his subjective statements. Plaintiff testified that he has problems with his concentration and memory; suffers from depression with symptoms of not wanting to talk to anyone and isolating from others, feeling sad, and crying for no reason; gets into conflicts with others due to anger problems; suffers from anxiety; is easily distracted; lives with his parents; rarely drives; and spends most of his time at home, occasionally going to the grocery store with his mother. Doc. 18 at 12. He contends that the ALJ erred by discounting these statements based on the fact that he has had some response to treatment and periods of decreased or no symptoms.

An ALJ's evaluation of a claimant's subjective statements follows a two-step process. First, the claimant must show "evidence of an underlying medical condition" and, secondly, evidence of either "(1) objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged [symptoms]." *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991). If objective medical evidence does not confirm the severity of a claimant's alleged symptoms but the claimant establishes an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must then evaluate intensity and persistence of the alleged symptoms and their effect on the ability to work. *See* 20 C.F.R. §§ 404.1529(c) and (d), 416.929(c) and (d). During this evaluation, the ALJ considers the claimant's testimony regarding symptoms, including any inconsistencies between that testimony and the other evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4); *Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). The ALJ may discount a claimant's subjective testimony regarding symptoms and limitations if the ALJ "articulate[s] explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Although Plaintiff argues that the ALJ erred in evaluating his subjective statements, he points to no evidence supporting his subjective statements. He merely argues that a response to treatment does not mean he is not mentally disabled and that a work environment is different from home or a mental health clinic. Doc. 18 at 13. In this case, the ALJ relied on Plaintiffs' medical records to find that his statements were inconsistent

with the record. R. 638–49. These records alone, described in detail above, constitute substantial evidence supporting the ALJ's decision to discount Plaintiff's subjective statements, as they document Plaintiff's improvement and the well-controlled nature of his conditions for more than four years preceding his administrative hearing. The ALJ's decision also discusses Plaintiff's daily activities, such as caring for horses in the family business, preparing simple meals, cleaning, mowing grass, handling personal care, shopping, hunting, fishing, swimming, spending time with his family playing games, and earning Bs and Cs in a year-long course at a technical college to obtain a certificate in diesel mechanics, all of which are inconsistent with Plaintiff's subjective complaints about the intensity and persistence of his alleged symptoms and their effect on his ability to work. R. 632–33. Thus, the Court finds that the ALJ properly articulated explicit and adequate reasons for her determination regarding Plaintiff's subjective statements and, after an independent review of the record, finds that substantial evidence supports the ALJ's finding.

### III.   CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1.   This matter is REVERSED and REMANDED to the Commissioner for additional proceedings consistent with this opinion.

2.   A final judgment will be entered separately.

DONE this 29th day of March, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE